531 So.2d 895 (1988)
In the Matter of ANONYMOUS, a Minor.
Civ. 6517.
Court of Civil Appeals of Alabama.
June 9, 1988.
*896 Wendy Crew and E. Hampton Brown, Birmingham, for appellant.
Denise Anderson, Birmingham and Sharon Ficquette, Asst. Atty. Gen., for appellee.
PER CURIAM.
This is the second case to be appealed to this court regarding the operation and effect of Alabama's statute requiring parental consent or a judicial waiver of that consent prior to a minor's obtaining of an abortion. §§ 26-21-1 through -8, Ala.Code (1975) (1987 Cum.Supp.).
In Matter of Anonymous, 515 So.2d 1254 (Ala.Civ.App.1987), we reversed the trial court's judgment denying the minor's petition to waive parental consent to have an abortion. We held that the trial court abused its discretion in finding that the minor was not mature enough to make an informed decision regarding the abortion and that the abortion would not be in her best interests. We did not address the question of the statute's constitutionality in that case, stating that to do so was not "essential to the decision of the actual case before the court." Anonymous, 515 So.2d at 1256.
In this case the minor appeals, asserting only that the statute is unconstitutional. We are required, therefore, to address the constitutional challenge to the statute in this case. Although a number of constitutional issues are raised, we address only that one issue necessary to the resolution of this particular case. See Chas. C. Steward Machine Co. v. Davis, 89 F.2d 207 (5th Cir.1937); Rainey v. Ford Motor Credit Co., 294 Ala. 139, 313 So.2d 179 (1975).
The dispositive issue is whether the parental consent statute denies to the minor in this case her right to the equal protection of the laws guaranteed to her by the Fourteenth Amendment to the United States Constitution.

I
The minor in this case is in the legal and physical custody of the Alabama Department of Human Resources (DHR). As was presented to this court in brief and in oral argument, DHR is apparently unable to give consent to a minor seeking permission to have an abortion due to DHR policy stemming from its reliance on federal Medicaid funding, which is available apparently only where the department receiving such funds follows recent federal prohibitions against governmental funding of abortions.
In short, DHR is prevented, it would seem, from ever giving consent to a minor who desires to obtain an abortion.
The minor argues that the inability of DHR to give consent has the effect of placing her in a different class from those minors who do have access to parents or guardians who could, at least in theory, *897 give consent to a minor seeking an abortion. She contends that this disparate treatment of her by the parental consent statute in this case violates her constitutional right to the equal protection of the laws. We agree.
the guaranty of equal protection of the law means that no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in like circumstances. Ellard v. State, 474 So.2d 743 (Ala.Crim. App.1984). Nevertheless, in an equal protection context, if the statute's purpose is found to be legitimate, "the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish." Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869, 881, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751 (1985).
In other words, most statutes challenged as violating equal protection are upheld as bearing a rational relationship to the legitimate purpose of the statute, despite the classification and unequal treatment of one class under the statute. As will be seen, the burden imposed on the minor in this case goes to the very heart of the purpose of the parental consent statute, defeats that purpose, and can in no way be said to bear a rational relationship to that purpose under the applicable case law.
As we have noted in Anonymous, 515 So.2d at 1255, we are well aware that this is a most sensitive area of the law and of the unique and crucial nature of proceedings under the statute in question. Thus, we have not entered into our decision in this case lightly, or without due consideration to the law and the normal deference given by the judiciary to legislative enactments. That being said, we are nevertheless convinced that the parental consent statute, as it applies to the minor in this case and to other similarly situated minors, is unconstitutional and that the trial court must, therefore, be reversed to the extent that it held the statute to be constitutional in this case.

II
Ever since Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), established a woman's constitutional right to abortion, states have attempted in various ways to regulate that right. The question of parental consent has been one of the most frequently debated issues in terms of defining the scope of the right to abortion. See Comment, Abortion: An Unresolved IssueAre Parental Consent Statutes Unconstitutional?, 55 Neb.L.Rev. 256 (1976).
In 1979 the question as to the constitutionality of parental consent statutes was largely settled by Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).
In that case the Supreme Court struck down a state statute which required that a minor receive parental consent or obtain judicial approval following notification to her parents prior to obtaining an abortion. The Court held that such a statute unconstitutionally burdened the right of the pregnant minor to seek an abortion. Bellotti, 443 U.S. 622, 99 S.Ct. 3035.
The Court, however, did not stop at finding the statute unconstitutional, but went on to describe the sort of parental consent statute that would pass constitutional muster. This drafting of an acceptable statute was criticized by the concurring opinion of Justice Stevens, who was joined by Justices Brennan, Marshall, and Blackmun in his concurrence.
Justice Stevens noted the following with regard to the Court's action:
"Until and unless Massachusetts or another State enacts a less restrictive statutory scheme, this Court has no occasion to render an advisory opinion on the constitutionality of such a scheme. A real statuterather than a mere outline of a possible statuteand a real case or controversy may well present questions that appear quite different from the hypothetical questions Mr. Justice POWELL has elected to address. Indeed, there is a certain irony in his suggestion that a statute that is intended to vindicate `the special interest of the State in encouraging *898 an unmarried pregnant minor to seek the advice of her parents in making the important decision whether or not to bear a child,' ... need not require notice to the parents of the minor's intended decision. That irony makes me wonder whether any legislature concerned with parental consultation would, in the absence of today's advisory opinion, have enacted a statute comparable to the one my Brethren have discussed."
Bellotti, 443 U.S. at 656 n. 4, 99 S.Ct. at 3054 n. 4.
We hardly need state that the fact situation of the appeal before us does present a question quite different from the situation which was contemplated by the statute suggested by the Court in Bellotti.
In any event, although the majority of the Court has not had an occasion to speak specifically to the constitutionality of the parental consent statute suggested by the Court in Bellotti, Justice Powell's opinion did set up certain guidelines for future parental consent statutes. The Alabama statute follows, in the main, the basic requirements of that decision.

III
The constitutionality of a parental consent statute is premised on the state's legitimate interest in ensuring that minors make informed choices with respect to such grave and irrevocable matters as abortion, and that promoting parental consultation and/or consent to such decisions would serve that interest. Bellotti, 443 U.S. 622, 99 S.Ct. 3035.
That is, although Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, prohibits unwarranted governmental intrusion in a woman's decision to terminate a pregnancy, the decision to abort may be qualified by regulations reflecting valid state interests. See also Planned Parenthood v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). Thus, the Supreme Court held in Bellotti, 443 U.S. 622, 99 S.Ct. 3035, that the state has a legitimate interest in encouraging parental participation in a minor's decision to obtain an abortion and in protecting children from making decisions marked by immaturity and lack of information.
As required by Bellotti, Alabama's parental consent statute provides for a judicial bypass procedure to avoid a unilateral parental veto over the minor's constitutional right to an abortion.
As noted, the minor in this case is in the legal custody of DHR, which apparently is prohibited from ever consenting to a minor's request for permission to have an abortion.
The question, clearly, is how the statute can be construed as constitutional in this casei.e., where there is no parent or guardian to give consentsince the legitimate interest that gives the statute its constitutional status is not present. That is, is the statute constitutional with respect to this minor or similarly situated ones, in view of there being no parent or guardian who could offer that consultation (or consent) designed to serve the state's legitimate interest in seeing that the minor's decision is an informed one?
It is argued that this is permissible by reasoning that, since the statute provides a judicial bypass procedure whenever the minor cannot seek parental consent "for any reason," the issue is settled. § 26-21-3(e) Ala.Code (1975) (1987 Cum.Supp.). That is, it is argued that the fact of the minor's having no access to parental consent, due to DHR's policy prohibiting it from consenting, is covered by the statute and is constitutional since the minor has access to the judicial bypass procedure. We do not think that such a conclusion is supported by the holding in Bellotti.
As indicated, the constitutionality of parental consent statutes was premised, not on the judicial bypass mechanism, but on the state's legitimate interest in ensuring that minors make informed choices and that parental consultation serves that interest. The judicial bypass is constitutionally required to offset the intrusion into the minor's right to an abortion represented by parental consultation and consent. That is, the judicial bypass procedure is part of the constitutional accommodation to, not part *899 of the state's legitimate interest in, intruding on the minor's right to an abortion.
Thus, it seems clear that Bellotti cannot be read to mean that a judicial forum, and that alone, can be erected between the minor and her right to an abortion. In other words, it seems clear to us that it is only in providing for an election not to seek consent from parents or legal guardians, or upon the failure of her parent or legal guardian to give her the consent, that the state is constitutionally permitted to require a minor, instead of seeking consent, to petition the court for the waiver of that consent. To so require the minor to petition the court for a waiver from a consent which she cannot obtain unduly burdens her constitutional right to an abortion. She thus stands in a different position from a minor who can at least seek consent. That is, unlike the minor who can seek consent, the minor in this case is subject to the trial court's "absolute veto over the minor's decisions, based on [its] judgment of her best interests." Bellotti, 443 U.S. at 654, 99 S.Ct. at 3054. We can discern no rational relationship between this burden and the legitimate state interest as embodied in the statute.
In short, absent the statute's stated constitutional reason for beingi.e., parental involvement in the minor's decision to seek an abortionthe statute's legitimate purpose is defeated and is unconstitutional with respect to minors such as the one in this case.
Therefore, we would reverse the trial court for, in effect, finding the statute to be constitutional in this instance.
Thus, with respect to the minor in this case, since she did not even have the option of seeking consent from her legal guardian, we would hold the statute to be an unconstitutional and unwarranted intrusion into her constitutional right to have an abortion, denying her the equal protection of the laws accorded those minors who do have a parent or guardian who could, at least in theory, give such consent.
We would note that it is inconceivable that some legal mechanism is not presently available whereby the minor's legal guardian could give consent if such guardian considered such consent to be in the best interests of the minor.
Regarding the facts of this specific case i.e., where the minor is less than thirteen years old and in her second trimesterwe would conclude by noting that a physician has never been, in our understanding, under any affirmative duty to perform an abortion when he could not in good medical conscience do so. Thus, we are not to be understood as approving or disapproving an abortion for this minor.
The case, therefore, is due to be reversed and remanded for proceedings not inconsistent with the above.
REVERSED AND REMANDED.
HOLMES and INGRAM, JJ., concur.
BRADLEY, P.J., dissents.
BRADLEY, Presiding Judge, dissenting:
I most respectfully dissent.
The Supreme Court has recognized that the state's authority in regulating the activities of its children is broader than its regulatory authority over adult citizens. Planned Parenthood v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). Thus, although Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), prohibits unwarranted governmental intrusion in a woman's decision to terminate a pregnancy, the decision to abort may be qualified by regulations reflecting valid state interests. Roe.
Certain abortion regulations designed to protect children have been deemed valid reflections of significant state interests. One such legitimate state interest, recognized by the Supreme Court and, thus, protectable by regulation, is the state's interest in encouraging parental participation in a minor's decision to terminate a pregnancy. Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). The state's interest in promoting parental consultation is rooted in a desire to protect children from making decisions marked by their immaturity and lack of information.
*900 Bellotti. This concern is validly reflected in Alabama's Parental Consent Statute. § 26-21-1(a)(1), Code 1975 (1987 Cum. Supp.).
In addition to the requirement that the regulations reflect a significant state interest, the Supreme Court has determined that in the case of parental consent statutes, the statute may "not unduly burden the right to seek an abortion." Bellotti.
Whether an undue burden exists is determined by application of three tests to the statute. Bellotti. Those three tests are: (1) if parental consent to the abortion is unobtainable, is there an alternative mechanism by which the abortion may be obtained; (2) if the minor can demonstrate that she is mature and well-informed enough to make the decision, or, in the alternative, that the abortion is in her best interests, can the abortion be obtained without the threat of a third-party veto; (3) if proceedings are instituted pursuant to the statute, will the resolution of the minor's abortion petition be handled expeditiously and anonymously. Bellotti.
I would find that Alabama's Parental Consent Statute passes each of these constitutional tests. Specifically, section 26-21-3(e), Code 1975 (1987 Cum.Supp.) provides that a minor who either elects not to, does not, or cannot obtain parental consent to the abortion "may petition, on her own behalf, the juvenile court, or court of equal standing ... for a waiver of the [parental] consent requirement of this section pursuant to the procedure of section 26-21-4." In short, the statute provides an alternative procedure for obtaining the abortion without parental consent.
Minor asserts and the majority opinion finds that because minor is in the legal custody of the Department of Human Resources (DHR) and has no parent who can consent to her having an abortion, the act is unconstitutional as applied to her. I disagree. The statute specifically addresses three categories of pregnant minors who may be required to obtain an abortion via the judicial bypass mechanismthose who: (1) elect not to seek parental consent; (2) do not seek parental consent, or (3) cannot seek parental consent "for any reason." § 26-21-3(e), Code 1975 (1987 Cum.Supp.).
The Supreme Court has specifically held that in cases where parental consent is unavailable, no undue burden exists if the statute provides an alternative mechanism by which the abortion may be obtained. Bellotti. The Alabama Parental Consent Statute, pursuant to section 26-21-4, provides such a bypass mechanism.
In my opinion, the majority improperly relies on the fact that minor has no parent who can, at the outset, give consent to the abortion. The majority finds that this single fact makes the statute unconstitutional as applied to minor due to the fact that, because minor has no parent with whom to consult, her right to an abortion is unduly burdened by the very existence of the statute.
I disagree.
The Bellotti case specifically holds:
"[E]very minor must have the opportunityif she so desiresto go directly to a court without first consulting or notifying her parents....
"...
"... [E]very pregnant minor is entitled in the first instance to go directly to the court for a judicial determination without prior parental notice, consultation, or consent...."
In my opinion this language in the Bellotti case strongly suggests that the Supreme Court's concern in applying these parental consent statutes is in insuring that a pregnant minor is afforded an efficient mechanism for bypassing parental consent. Bellotti.
Minor in this case is afforded the same alternative to parental consent as the minor who, for some other, equally valid reason, does not, will not, or cannot obtain parental consent. § 26-21-3(e), Code 1975 (1987 Cum.Supp.). In my opinion, Bellotti ultimately stands for the proposition that a statute which sets up an effective mechanism for bypassing parental consent, without a looming threat of a subsequent third-party veto, is not unduly burdensome and is therefore constitutional. Thus, this is *901 the proper focus for determining constitutionality.
Finally, as I understand the majority opinion, any minor in the custody of DHR will now be able to make the decision to obtain an abortion on her own. She will not be required to obtain the approval of a juvenile court, with all the attendant safeguards provided by the statute in question. Such a situation denies a minor female such as the minor in the case at bar access to a source of advice that would be helpful to her in making such a far-reaching decision as to whether to have an abortion. In my opinion such a situation is not in the best interests of the minor in this case. I would uphold the constitutionality of the statute in question.